WESTERN PUBLISHING HOUSE, Appellant, v. DISTRICT
TOWNSHIP OF ROCK, Appellee.

| 84 101 |
| o117 326 |

1. **Contracts with Officers of Corporations:** RATIFICATION. A
contract in writing for school books, wherein the contracting parties
on one side describe themselves as members of the board of directors
of a certain school district named, and agree to pay the price
therein stipulated, is but the individual contract of such directors
and the subsequent passage of a motion by the board of directors of
such school district "to ratify the contract of those members of the
board who signed" the same, could not have the effect of a ratifica-
tion by the school district, as the contract did not by its terms
purport to be binding upon it.

2. ———: ADOPTION. Neither would such action of the school district
amount to an adoption of said contract .if the adoption was not
accepted by the other contracting party before the district had
rescinded its action.

*Appeal from Cherokee District Court.* — HON. C. H.
LEWIS, Judge.

WEDNESDAY, DECEMBER 16, 1891.

ACTION upon a contract for the purchase of eight
copies of a book called "Yaggy's Anatomical Study."
A demurrer to the petition was sustained, and judg-
ment rendered thereon. The plaintiff appeals.
*Affirmed.*

*Earnest C. Herrick,* for appellant.

*J. D. F. Smith,* for appellee.

BECK, C. J.—I. As the only question in the case
involves the sufficiency of the petition to support the
action it is necessary for a correct presentation of the
facts pleaded to fully set out the parts of the petition
stating the cause of the action. They make the follow-
ing allegations:

"That on the fifth day of July, 1888, Levi Forsyth, Jacob Heller, John White, John Peters and Horace Cook were members of the board of directors of the defendant; that on said date the said members executed to the plaintiff a certain written contract or order for eight sets of Yaggy's Anatomical Study, published by the plaintiff, and for which the said members agreed to pay the sum of thirty-five dollars each, making a total amount of two hundred and eighty dollars; that by the further terms of said order the said studies were to be shipped by American Express, C. O. D., and the plaintiff agreed in said order to take in payment therefor a warrant or order on the treasurer of said district township of Rock, payable at the nearest American Express office; that a copy of said order is hereto attached, marked 'Exhibit A,' and made a part hereof; that by the further terms of said order, it was provided that said studies were to be shipped to John White, who was the president of the board of directors at that time; that in accordance with the said order the said studies were duly shipped by express to said John White; that said studies were so ordered by the said members of said board of directors for the use and benefit of defendant in its schools; that afterwards, to-wit, on or about the ninth day of February, 1889, at a regularly called meeting of the board of directors of the defendant, the said board of directors passed a vote to ratify the said purchase of said studies by the said individual members of said board, and a copy of which said action of said board of directors, as shown by its official record thereof, is hereto attached, marked 'Exhibit B,' and made a part hereof; that afterwards, at the regular annual meeting of the electors of said district township on the eleventh day of March, 1889, the board of directors of the defendant were duly authorized by said electors to place said Anatomical Studies in each of the schools of said township, there

being eight subdistricts in said township, and a copy of which said action at said annual meeting, as shown by the official record of said meeting, is hereto attached, marked 'Exhibit C,' and made a part hereof. The plaintiff further states that, at the time of the ratification by said board of directors of the said contract of said members for the purchase of said studies, there was in the contingent fund of said district township over five hundred dollars unappropriated; that on the eighteenth day of March, 1889, the board of directors of the defendant did, at a regularly called meeting of said board, adopt the following resolution, namely: 'Moved and seconded that the act of the board ratifying the contract of purchasing eight anatomical charts is hereby repealed. Carried.' That at the time when said resolution was adopted the said Yaggy's Anatomical Studies, being the same charts referred to in said resolution, were in the office of the said express company, where they had remained from the date of the said ratification of said contract, as hereinbefore alleged, the said charts having been duly shipped per said express company at once after the said order therefor was given, and having been in said office from prior to said ratification of said contract until after the said resolution of March 18, 1889, and being now in said office."

The petition further alleges that the plaintiff demanded the order or warrant upon the treasurer of the defendant, which was refused, and that the books have been sent pursuant to the contract, and are now in possession of the express company, ready for delivery upon payment as provided by the contract. The order or contract designated in the petition as "Exhibit A" is in the following language:

"Agreement between the undersigned members of the board of directors of the district township of Rock, in the county of Cherokee, and state of Iowa, and the

Western Publishing House, of Chicago, Illinois, for the goods specified on the back of this contract to be shipped on or about July 30, A. D. 1888, and delivered to the American Express Company at Chicago, Illinois, properly packed and marked as specified. We, the undersigned, hereby order shipped to us, as named below, eight copies of Yaggy's Anatomical Study, at thirty-five dollars each, provided a majority of said board sign this agreement. We agree to pay for the above-named goods, ———, 188—. The Western Publishing House agrees to ship said articles in good condition by express, C. O. D., as specified, on or about July 30, 1888, and further agree to accept in payment an order on the treasurer of said district township, for the amount, with ——— per cent. interest, which order shall be payable at the nearest express office (American), where the Western Publishing House will send it for collection. Dated July 5, 1888.

"For and in consideration of the above agreement, the Western Publishing House guarantees that the goods shall be in every respect equal to sample; otherwise the subscribers are not compelled to accept the same.

"[Signed]                P. O. Address. ·

"Levi Forsyth, Washta, Iowa.

"Jacob Heller, Cherokee, Iowa.

"John White, Cherokee, Iowa.

"John Peters, Cherokee, Iowa.

"Horace Cook, Quimby, Iowa.

"Treasurer's name is D. Liffering, P. O. address, Cherokee, county of Cherokee, state of Iowa.

"N. B. Our agents are authorized only to sell our goods at proper prices. All collections are to be made by us, unless the agent has written authority granting him this right.

"Western Publishing House.

"By J. Walter Leahy."

Indorsed on the contract are these words:

"*Western Publishing House, 315–321 Wabash Ave. (Cor. Congress St.), Chicago, Ill.*

"GENTLEMEN:—Please ship by American Express Company to John White, of Cherokee, county of Cherokee, state of Iowa, eight copies of 'Yaggy's Anatomical Study,' at thirty-five dollars each, in accordance with specifications in contract on this sheet.

"JOHN WHITE.      J. WALTER LEAHY,

"Agent."

On the ninth day of February, 1889, at a meeting of the board of directors, a motion was made and carried, in the language of the minutes of the proceedings, "to ratify the contract of those members of the board that signed the contract of charts." At a meeting of the board of directors held on the eleventh day of March, 1889, a motion was made and carried authorizing the board of directors to place in each subdistrict one of Yaggy's Anatomical Studies. The petition, it will be observed, alleges that on the eighteenth day of March, 1889, "the act of the board ratifying the contract of purchasing eight anatomical charts was repealed."

II. A consideration of the agreement upon which the plaintiff bases its right to recover discloses the fact that it does not purport to be the contract of the defendant, the school district, and that there is not one word in it indicating the purpose of the directors to bind the district, or the intention of the plaintiff to require it to be bound by the agreement. The obligors in the instrument describe themselves as directors of the school district; but it does not appear that the goods sold were bought for the use of the defendant, or pursuant to its authority or order. It is stipulated in the contract that the goods shall be shipped to the directors, not to the defendant or its officers. On the face of the instrument, it is plainly shown that the persons who signed the instrument, and who are designated

1. CONTRACTS with officers of corporations: ratification.

therein as "directors," are alone bound by it as obligors. The plaintiff agrees in the instrument to accept in payment an order or warrant issued by the defendant, but this stipulation does not bind it to look to the defendant for payment, or make the instrument its contract. Upon the face of the instrument the defendant is not bound, and the intention clearly appears to bind the signers individually. The petition does not allege or show that the defendant is bound by the contract, or was intended by the parties to be bound. It specifically alleges that the "members [of the board of directors] agree to pay for the books." It alleges that the books were "ordered by said members of said board of directors for the use and benefit of defendant in its schools." It is not alleged that the contract was made pursuant to any prior order, request, or authority of the defendant; and it is averred that the books "are now" in the express office, thus showing and averring, negatively, that the goods have never come into possession of the defendant, and have never been used in its schools.

III. The plaintiff, while inferentially conceding that the contract was made without authority, insists that it was afterwards ratified. But as the contract did not purport to bind the defendant, it could not ratify it. There is no such thing as the ratification of a contract by an obligor made by another, when it does not purport to bind him, but binds the other. In such a case the obligor cannot become bound by a ratification. He can only become bound by a new contract assuming or adopting the obligation of the prior one. If it be assumed that the defendant did adopt the contract (which is not alleged in the petition) it must appear what the terms of the contract adopting it are, and that they have been performed. But no such showing is made in the petition.

IV. If the action of the board of directors of March 11th be regarded as the adoption of the individ-

2. ——: adoption. ual contract of the directors, it does not appear that the plaintiff assented to or accepted it at any time. Nor is it shown that the defendant acquired the right under such adoption, by the assent of the plaintiff, to take the property. It is not shown that the plaintiff in any way accepted such adoption of the contract so as to bind the defendant. Until that was done, it could withdraw its adoption of the contract, which it did do by the resolution and action of its board of directors in their meeting of March 18, 1889.

We reach the conclusion that the contract was not intended to bind the defendant, and therefore was not ratified by it, and that, if the act claimed to be a ratification may be regarded as a contract of adoption, it was rescinded before it was accepted, and before the plaintiff acquired thereby any rights by reason of such adoption. These considerations lead us to the conclusion that the judgment of the district court ought to be AFFIRMED.